# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                No. CR 14-3902 JB

JOE RAY ALIRES,

    Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Objections to Presentence Report, filed March 22, 2017 (Doc. 33)("Objections"). The Court held a sentencing hearing on April 25, 2017. The primary issue is whether Defendant Joe Ray Alires -- who pled guilty to a one-count Indictment charging him with being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) -- has at least three prior convictions for a violent felony or drug offense making him an armed career criminal who is subject to an enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"). The three prior convictions for violent felonies upon which the United States Probation Office ("USPO") relies in its Presentence Investigation Report ¶ 13, at 4, disclosed April 14, 2017 (Doc. 36)("PSR"), to apply the ACCA enhancement are for New Mexico "Residential Burglary," in violation of NMSA 1978, § 30-16-3(A). Because the Court concludes that the term "dwelling house," as the New Mexico Residential Burglary statute, NMSA 1978, § 30-16-3(A), uses that phrase, does not proscribe broader conduct than does the ACCA's generic enumerated offense of burglary, which itself proscribes unlawful entry into a "building or other structure," it will overrule the Objections and apply the ACCA's enhancement pursuant to 18 U.S.C. § 924(e)(1).

## FACTUAL BACKGROUND

On March 9, 2017, Alires pled guilty to a one-count indictment charging him with a violation of 18 U.S.C. § 922(g)(l), for being "Felon in Possession of a Firearm." Plea Agreement ¶ 3, at 2, filed March 9, 2017 (Doc. 31)("Plea Agreement"). In the Plea Agreement, Alires admitted to the following:

> On or about June 26, 2014, in Bernalillo County, in the District of New Mexico, I, Joe Ray Alires, having been previously convicted of the felony offenses of residential burglary, possession of a controlled substance, possession of a firearm by a felon, fraudulent use of a credit card, commercial burglary, possession of a deadly weapon or explosive by a prisoner, receiving stolen property, conspiracy to commit receiving and transferring a stolen motor vehicle, residential burglary, and unlawful taking of a motor vehicle, knowingly possessed in and affecting commerce, a firearm and ammunition: a Sig Sauer, model P226, 9mm caliber, semiautomatic pistol, serial number U135012 and approximately, ten (10) Winchester brand 9mm caliber cartridges; and approximately five (5) Remington Peters brand 9mm caliber cartridges. Specifically, the loaded pistol was located near the driver's seat of the Toyota pickup that I was driving prior to it being seized by law enforcement.

Plea Agreement ¶ 6, at 3.

> I have been informed that [the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF")] examined the firearm and ammunition and determined that they both meet the statutory definitions of a firear[]m and ammunition. I have also learned that the firearm was manufactured outside the state of New Mexico and that the firearm and ammunition therefore had to have been previously shipped or transported [by] interstate commerce to be physically present and in my possession on June 26, 2014 in Bernalillo County, in the District of New Mexico. By signing this agreement, the Defendant admits that there is a factual basis for each element of the crime to which the Defendant is pleading guilty. The Defendant agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the Defendant's sentence, including, but not limited to, the advisory guideline offense level.

Plea Agreement ¶ 6, at 3-4.

Alires has twelve convictions and eight other arrests, and a criminal history category of VI. See PSR at 6-16. Regarding Alires' relevant convictions for "felony offenses of residential burglary," Plea Agreement ¶ 6, at 3, Alires was arrested for his first residential burglary offense

on September 8, 1999, see PSR ¶ 34, at 8.  Alires' fingerprints were lifted from a residence in

Albuquerque, New Mexico, where the owners had reported that the "back gate to their home was

open . . . [and] several items [were] missing . . . includ[ing] three rifles, a shotgun, and property

from the children's room."  PSR ¶ 34, at 8.  Albuquerque Police's investigation also discovered

that, "on March 31, 1999, [Alires] pawned a Nintendo 64 (the [residence owner's] gaming

system), games, and also an LCD projector."  PSR ¶ 34, at 8.  Alires was arrested for his second

residential burglary offense on April 11, 2005.  See PSR ¶ 38, at 10-11.  On that occasion,

> Albuquerque Police were dispatched to a burglary in progress.  The caller advised
> she was locked in her bathroom and could hear a back window breaking.  The
> caller also told police that she could hear someone in her house.  Officers arrived
> on scene, and observed the defendant walking out the front door.  He appeared
> startled as he looked at the officers and quickly walked back into the house,
> slamming the door.  Officers gave the defendant commands to come out of the
> house, as officers were informed the home owner was still inside.  Officers broke
> a window in the house and continued to give the defendant verbal commands to
> exit the residence.  The defendant ultimately surrendered to police . . . .

PSR ¶ 38, at 10-11.

Alires' arrest for his third residential burglary offense came on October 27, 2005.  See

PSR ¶ 40, at 11-12.  There, a

> police report from the Albuquerque Police Department, [charged that Alires] did
> unlawfully enter a residence on General Stilwell NE, with the intent to commit a
> theft ther[e]in.  A neighbor to the residence observed the defendant running from
> a residence out a back yard.  The defendant ran from neighbors and jumped into a
> vehicle driving in the area.  Police located the address tied to that vehicle and
> spoke with the owner who advised the person who jumped in the vehicle was Joe
> Alires.  The owner of the residence on General Stilwell, NE advised police no one
> had permission to be in his residence or take any property in the residence.  Stolen
> items from the home had the approximate value of $1,200.00.

PSR ¶ 40, at 11-12.  Alires' fourth arrest for a residential burglary offense came on June 26,

2014, and came in connection with the conduct leading to Alires' present one-count federal

charge for being a felon in possession of a firearm.  See PSR ¶ 41, at 12.  Alires was in the

process of burglarizing a residential home when police officers arrived, and thereafter apprehended him and discovered the firearms. See PSR ¶ 10, at 3-4.

## **PROCEDURAL HISTORY**

Alires pled guilty to a one-count indictment charging him with a violation of 18 U.S.C. § 922(g)(l), for being "Felon in Possession of a Firearm." Plea Agreement ¶ 3, at 2. The USPO disclosed a PSR on April 14, 2017, recommending the Court apply the ACCA's enhancement for armed career criminals pursuant to 18 U.S.C. § 924(e). PSR ¶ 25, at 6. The PSR applies the ACCA enhancement, stating:

> The offense of conviction is a violation of 18 U.S.C. § 922(g), and the defendant has at least three prior convictions for a violent felony or serious drug offense, or both, which were committed on different occasions. Therefore, the defendant is an armed career criminal and subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e). The offense level for an armed career criminal is the greatest of §§4B1.4(b)(1), (b)(2) or (b)(3). In this case, the defendant used or possessed a firearm or ammunition in connection with either a crime of violence, as defined in §4B1.2(a), or a controlled substance offense, as defined in §4B1.2(b), or the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a).

PSR ¶ 25, at 6.

Alires then filed his Objections to the ACCA enhancement on March 22, 2017, see Objections at 1, and the Plaintiff United States of America responded to the Objections on March 23, 2017, in support of the ACCA enhancement, with the United States' Response to Defendant's Objections to Presentence Report, filed March 23, 2017 (Doc. 34)("Response"), see Response at 1. Alires replied to the Response with the Defendant's Reply to the United States' Response to Defendant's Objections to Presentence Report at 6, filed April 10, 2017 (Doc. 35)("Reply"). The USPO disclosed an addendum to the PSR on April 19, 2017, to reflect application of the "2016, rather than the 2015, Guidelines Manual." Memorandum, disclosed April 19, 2017 (Doc. 40)("Addendum").

1.      **The Objections.**

Alires primarily objects to "the finding in paragraph 22 of the Presentence Report [] that the defendant is an armed career criminal based on his prior convictions . . . in New Mexico for residential burglary."    Objections at 1.    Alires, consequently, objects to the PSR's recommendation that the Court apply the ACCA sentencing enhancement.  See Objections at 1-2.  In his Objections, Alires contends that the "meaning of 'dwelling house' in N.M.S.A. § 30-16-3(A) is any structure, any part of which is customarily used as living quarters."  Objections at 2.  Because of "the New Mexico Court of Appeals decision in *State v. Foulenfont*, 895 P.2d 1329, 1332 (NM App. 1995)," Alires argues, "the framework and language of § 30-16-3 strongly suggests vehicles, watercraft and aircraft are 'structures' within the 'dwelling house' definition." Objections at 2.  Alires thus explains that, because there is "a realistic probability New Mexico would apply § 30-16-3(A) to unlawful entry into vehicles," and because his "offense stretches beyond the confines of generic burglary, Mr. Alires' potential ACCA sentence is founded on the ACCA's residual clause," which is now unconstitutional.  Objections at 2-3.

2.      **The Response.**

The United States argues in its Response that "the elements of the New Mexico offense of residential burglary in § 30-16-3(A) match or are narrower than the Supreme Court's definition of generic burglary, [meaning that the] Defendant's burglary convictions should qualify as ACCA predicate offenses."  Response at 2.  The United States contends that Alires' New Mexico residential burglary offenses thus fall within the purview of the ACCA's enumerated offense of generic burglary, see 18 U.S.C. § 924(e)(2)(B)(ii), subjecting him to the ACCA enhancement, see Response at 2.  According to the United States, "if a statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form."  Response at 2 (citing Descamps

v. United States, 133 S. Ct. 2276, 2283 (2013)). Further, the United States explains that "[t]o determine whether a prior conviction is for generic burglary courts apply what is known as the categorical approach," which "requires a comparison between the elements of the statute at issue with the elements of the generic offense." Response at 2-3 (citing Taylor v. United States, 495 U.S. 575, 600 (1990); Mathis v. United States, 136 S. Ct. 2243, 2248 (2016)). The United States provides that, where a statute contains "multiple alternative elements," however, "a court may employ the modified categorical approach, but if the statute instead 'enumerates various factual means of committing a single element,' the court may not." Response at 3 (citing Mathis v. United States, 136 S. Ct. at 2249). The United States argues that, to ascertain whether the modified categorical approach must be applied, the Supreme Court of the United States of America has explained:

> The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means. If they are elements, the court should do what we have previously approved: review the record materials to discover which of the enumerated alternatives was the offense of conviction and compare the elements of the offense of conviction to the generic crime. But instead if they are means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution.

Response at 3 (citing Mathis v. United States, 136 S. Ct. at 2256).

Here, the United States argues:

> [T]he New Mexico burglary statute has two alternative subsections with different penalties. Subsection 30-16-3(A), residential burglary, is a third degree felony, which carries a maximum penalty of three years in prison. . . . In contrast, subsection 30-16-3(B), commercial burglary, is a fourth degree felony, which carries a maximum penalty of 18 months in prison. . . . Thus, because these two alternatives have different penalties, they constitute different elements. . . . As a result, the New Mexico burglary statute is a divisible statute and the court may apply the modified categorical approach to determine which subsection formed the basis of defendant's convictions in this case. . . . Here, the modified categorical approach can be employed to establish that his convictions were for residential burglary.

Response at 3 (citing <u>Mathis v. United States</u>, 136 S. Ct. at 2256). Then, in support of its argument that the New Mexico residential burglary offense had elements that were the same or narrower than generic burglary, the United States argues that the New Mexico offense only "requires an entry of a dwelling house with the intent, at the time of entry, to commit a felony or theft therein." Response at 5. The "dwelling house element," the United States contends, is "narrower than the 'building or other structure' element of generic burglary," because in "New Mexico law, a 'dwelling house' is defined as 'any structure, any part of which is customarily used as living quarters' [which] is necessarily narrower than generic burglary because it applies to only one category of buildings or structures, i.e., only those customarily used as living quarters." Response at 5 (citing <u>State v. Ross</u>, 1983-NMCA-065, ¶ 11, 665 P.2d 310). Accordingly, the United States explains that its "conclusion that § 30-16-3(A) qualifies as a generic burglary offense is supported by the Tenth Circuit's analysis of generic burglary in *United States v. Ramon Silva*, 608 F.3d 663, 668-69 (10th Cir. 2010) . . . [where] the court held that generic burglary encompasses those burglaries that have been 'committed in a building or enclosed space . . . not in a boat or motor vehicle.'" Response at 6 (quoting <u>Shepard v. United States</u>, 544 U.S. 13, 16 (2005)). Thus, the United States asserts, when "[a]pplying *Silva* to § 30-16-3(A), a dwelling house unquestionably qualifies as 'a building or enclosed space' because dwelling house is defined as a 'structure, any part of which is customarily used as living quarters,'" and the "New Mexico definition of a dwelling house does not include a 'boat or motor vehicle' or any other means of transport. Instead, it is limited to 'structures.'" Response at 6 (citing <u>State v. Ross</u>, 1983-NMCA-065, ¶ 11, 665 P.2d 310). The United States last attacks Alires' reliance on the case of <u>State v. Foulenfont</u>, 1995-NMCA-028, 895 P.2d 1329, because the

"offense of conviction at issue in *Foulenfont* was § 30-16-3(B), not § 30-16-3(A)." Response at

7.

**3.** **The Reply.**

The Reply begins, in relevant part, by explicating:

> The *Taylor* Court made clear that certain "places . . . other than buildings" were not places, even if entered unlawfully with the intent to commit a crime that would qualify the offense as a "burglary." . . . Those disqualified places include booths, tents, automobiles, boats and railroad cars. . . . The Court later clarified in *Shepard* that the ACCA "makes burglary a violent felony only if committed in a building or enclosed space ("generic burglary") not in a boat or motor vehicle." . . . A defendant has been convicted of a "burglary" under the ACCA if the defendant has been convicted of an offense that "corresponds in substance" to the generic definition.

Reply at 4 (quoting Taylor v. United States, 495 U.S. at 599; Shepard v. United States, 544 U.S. at 15-16; United States v. Ramon Silva, 608 F.3d at 668-69). The Reply also concedes that "[t]he parties agree that § 30-16-3's section A has elements that are divisible from § 30-16-3's section B, given the difference in penalties between the two," thus inherently requiring application of the modified categorical approach. Reply at 5 (citing Mathis v. United States, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then . . . they must be elements.")). Accordingly, Alires' Reply provides that "[t]he parties dispute what places 'dwelling house' in § 30-16-3(A) encompasses," and that he "will demonstrate 'dwelling house' includes places, such as vehicles, watercraft, aircraft and similar structures that take New Mexico residential burglary outside the bounds of generic burglary." Reply at 5-6.

Alires proceeds to argue that New Mexico's Uniform Jury Instruction 14-1630 defines "dwelling house," for the purposes of New Mexico's residential burglary offense, as "any structure, any part of which is customarily used as living quarters." Reply at 6. Alires then contends that "the state's express definition of 'dwelling house' suggests an expansive

interpretation of the term[, because t]he definition refers to 'any' 'structure.'" Reply at 6. Alires

strongly relies on UJI 14-1630's use of the word "any," and highlights a Court of Appeal of New

Mexico's opinion which concludes that a "dwelling house" encompasses burglary of a garage

without access to a residence. Reply at 6-7. According to Alires, this UJI ensures that "jurors

would reasonably understand the definition to include a wide range of structures." Reply at 8.

Alires then addresses the Court of Appeal of New Mexico opinion

in *Foulenfont* [which] shows how far the "dwelling house" term stretches. In that case, the court applied to § 30-16-3 the ejusdem generis principle that where general words follow an enumeration of things of a particular and specific meaning, the general words are construed as applying to things of the same kind or class as those specifically mentioned. . . . Based on that principle the court held the term "other structure" that follows "vehicle, watercraft, aircraft, dwelling" in § 30-16-3's introductory paragraph means "an enclosure similar to a vehicle, watercraft, aircraft or dwelling."

Reply at 8. It is Alires' contention, then, that,

*Foulenfont*'s holding makes apparent that a vehicle, a watercraft or an aircraft is as much a "structure" as a dwelling is. In other words, the word "structure" includes those things as well as enclosures similar to them. Consequently, the accepted definition of "dwelling house" -- "any structure, any part of which is customarily used as living quarters," NMRA Crim. UJI 14-1631 -- must include a vehicle, aircraft or similar structure. This conclusion is consistent with the "'normal rule of statutory construction' to interpret 'identical words used in different parts of the same act [as having] the same meaning.'"

Reply at 9. Alires concedes, however, that the <u>State v. Foulenfont</u> holding concerns a

prosecution for NMSA 1978 § 30-16-3(B) and not for NMSA 1978 § 30-16-3(A). <u>See</u> Reply at

9.

Alires then turns his argument to policy, stating that the "statute's purpose is to protect

against the feeling of violation and vulnerability that occurs when a burglar invades one's

personal space." Reply at 10 (internal quotation marks omitted). This policy, Alires contends,

suggests that the "New Mexico legislature decided the invasion of one's personal space in the

home deserved greater protection than the invasion of non-residences, prompting it to increase the degree of felony from fourth, § 30-16-3(B) to third, § 30-16-3(A)."  Reply at 10. Accordingly, Alires posits that, "[i]n terms of privacy interests, it should not matter what type of structure constitutes the victim's home" and that, thus, "New Mexico designated unlawful entry of a vehicle as a third degree felony when any part of the vehicle is customarily used as living quarters because of the heightened privacy intrusion such an entry entails."  Reply at 10-11.

Alires then suggests that "New Mexico cases indicate a 'dwelling house' includes a vehicle such as a mobile home or a trailer."  Reply at 11.  Alires provides the Court with citation, then, to Supreme Court of New Mexico cases which consider approvingly convictions for "aggravated residential burglary of a mobile home" and criminal trespass -- which the Supreme Court of New Mexico states "necessarily include[s] . . . the offense of aggravated burglary of a dwelling house" -- of a trailer, which he argues support his argument for a broad reading of the term "dwelling house."  Reply at 11-12.  Alires also provides the Court with citation to cases involving convictions for "shooting at a dwelling," which similarly suggest mobile homes and trailers fall within the scope of "dwelling house," and thus argues, "[f]or all of these reasons, 'dwelling house' in § 30-16-3(A) encompasses vehicles, watercraft, aircraft and other similar structures."  Reply at 12.

At this point in the Reply, Alires -- who has already conceded that "§ 30-16-3's section A has elements that are divisible from § 30-16-3's section B, given the difference in penalties between the two," refines his argument regarding the Court's necessary consequent application of the modified categorical approach.  Reply at 5-6.  See id. at 13-14.  Ostensibly, Alires is objecting to a second layer of categorical review, wherein the Court would -- after its consideration of the record and Alires' specific predicate offenses to ascertain whether the

crimes of conviction were pursuant to NMSA 1978 § 30-16-3(A) or (B) -- "examine conclusive judicial records to determine if the defendant was convicted of a generic offense" as it pertains to NMSA 1978 § 30-16-3(A) alone.  Reply at 13-14.  Alires thus asks the Court to apply only the categorical approach to "the entire indivisible § 30-16-3(A)," which, he argues, will "lead[] to the same conclusion the Supreme Court reached in *Mathis* with respect to the Iowa burglary statute: the elements of New Mexico residential burglary are broader than the elements of generic burglary."  Reply at 14.  Alires explains: "In *Mathis*, the Court assessed an Iowa burglary statute that prohibited unlawful entry of 'any building, structure [or] land, water, or air vehicle.' . . .  Iowa law established the various structures were means, not elements. . . .  Because the location element encompassed land, water or air vehicles, Iowa burglary is not generic burglary."  Reply at 14.  Accordingly, Alires posits that, "also in the case of New Mexico residential burglary, the elements of that offense include entry into places that are outside the generic burglary definition: vehicles, watercraft, aircraft and similar structures."  Reply at 14.

Alires next focuses his argument on the notion that, "[w]hen the Supreme Court in *Taylor* and *Shepard* referred to what enclosures entry into which were outside generic burglary it gave no hint that using those non-generic structures for a certain purpose would transform them into generic structures."  Reply at 15 (citing Shepard v. United States, 544 U.S. at 15-16 (providing that generic burglary includes entry into "a building or enclosed space . . . not in a boat or motor vehicle"); Taylor v. United States, 495 U.S. at 591, 599 (providing that places disqualified from generic burglary include booths, tents, automobiles, boats and railroad cars)).  Alires explains that courts have thus "held that a non-generic place used as a residence or for business is still a non-generic place."  Reply at 15.  Alires also explains that many "courts have found state burglaries to be non-generic where the burglaries involved places used for accommodation,

business, and/or assembly." Reply at 16. It is Alires' primary contention, then, that "mobile homes and trailers are not generic burglary structures." Reply at 18. Alires concedes, however, that the Tenth Circuit, in <u>United States v. Spring</u>, 80 F.3d 1450 (10th Cir. 1996), concluded "that the burglary of a 'vehicle adapted for the overnight accommodation of persons' is a burglary of a 'structure' within *Taylor*'s generic burglary definition." Reply at 18. Alires argues:

> [T]he Tenth Circuit Court of Appeals recognized in *U.S. v. Ramon Silva*, 608 F.3d at 668-69, [that] the Supreme Court made clear its exclusion of all boats and motor vehicles from the generic burglary definition in *Shepard*. 544 U.S. at 15-16 (generic burglary includes entry into "a building or enclosed space . . . not in a boat or motor vehicle"); *see also United States v. Henrique*, 757 F.3d 144, 150 (4th Cir. 2014)(indicating Shepard clarified what Taylor meant by structure in its generic burglary definition).

Reply at 19. Alires nonetheless argues, too, that "*Spring* is also not an obstacle to the conclusion that New Mexico residential burglary is non-generic burglary for another reason as well. Even if a 'vehicle adapted for the overnight accommodation of persons' were a generic burglary structure, as *Spring* indicates, New Mexico's 'dwelling house' definition includes a much broader expanse of structures." Reply at 20. Alires last contends that the Court would be "mistaken to determine that there is not a realistic probability New Mexico would apply § 30-16-3(A) in a non-generic manner," Reply at 21, and asks that the Court sustain his Objections, <u>see</u> Reply at 21-22.

**4.    <u>The April 25, 2017, Hearing</u>.**

At the April 25, 2017, hearing the Court first announced its inclination to conclude that Alires' New Mexico residential burglary convictions qualified as violent felonies under the ACCA's enumerated clause and that it would be issuing an opinion detailing its rationale. <u>See</u> Transcript of Hearing at 4:6-19:7 (Court)("Tr.").[1] The Court then asked Alires if he had any

---

[1]The Court's citations to the transcript of the hearings refers to the court reporter's

further argument to add in support of his Objections.  <u>See</u> Tr. at 19:8-10 (Court).  Alires stated

that he did not and argued that "I think our arguments were set forth primarily in the [R]eply,"

and that he "would still maintain that the state definition of burglary does sweep [more] broadly

than the generic definition and also that the Court should not [apply the] modified categorical

approach."  Tr. at 19:11-18 (Keefe).  Regarding why the state offense sweeps more broadly than

the generic offense, Alires maintained:

> cases from New Mexico . . . support a finding that it sweeps more broadly than
> generic burglary in terms of applying to mobile homes and trailers which can then
> logically be extended to vehicles, watercraft, aircraft.  And from our reading of
> <u>Shepherd</u>, I didn't think that there was any mention of the purpose of the vehicles
> or automobiles whatever term they use in terms of it being a primary purpose of
> transportation. . . .  I think that that was one of the arguments that we kind of
> n[urt]ured was that there is no distinction between whether it's a purpose for
> transportation or possible residence is someone is living in a . . . [c]ar, and I think
> that that's more along the lines of what we're arguing towards that this could be
> applied in a situation where if someone is homeless and basically end up in their
> car and a burglary is committed that the residential burglary statute in New
> Mexico could apply to that situation.  So, Your Honor, I think that primarily the
> argument set forth in the reply are the arguments we would stand on.

Tr. at 19:19-20:16 (Keefe).  Alires also argued to the Court that it was noteworthy that

> last year in terms of the guidelines, which basically determined that burglary
> offenses rarely result in physical violence . . . basically [took] burglary out of the
> realm of crimes violence for guideline purposes.  I know that that is not in fact
> what we're here on today but it does seem like there is some inconsistency clearly
> between the guideline approach . . . and the remaining enumerated offense.

Tr. at 21:11-19 (Keefe).  The Court noted Alires' attempt to identify a trend in the law, but also

provided that notion simply "looks like it was kind of a split between Congress and the

commission."  Tr. at 21:19-22 (Court).

---

original, unedited version.  Any final transcript may contain slightly different page and/or line
numbers.

The United States then argued and agreed with the Court's inclination. See Tr. at 23:11-21 (Walsh). Regarding Alires' argument that the modified categorical approach should not be applied, the United States contended that "the statute is clearly divisible. One paragraph speaks for the residential burglary, the third degree, and then the other paragraph is the fourth degree, which encompasses commercial burglary." Tr. at 23:17-21 (Walsh). The United States also referenced the "[United States v.] Blair[, 734 F.3d 218 (3d Cir. 2013)] case, [which] was prior to Johnson . . . but . . . stood for the proposition . . . that once a statute is partially divisible, then it's divisible all the way through." Tr. at 23:22-24:5 (Walsh). The Court then gave Alires the last word on the ACCA Objection, and Alires explained:

> I think the argument set forth in the reply I guess view that more the section A as its own stand alone statute that is the basis of these convictions, and within that statute we're still arguing that . . . the residential burglary within section A is, sweeps more broadly than the generic definition so there is no concern about the divisibility of the statute, because we're not even considering Section B in terms of the actual conviction in this case.

Tr. at 24:22-25:6 (Keefe). The Court overruled Alires' Objections, telling the parties that it would issue a memorandum opinion as soon as possible detailing its rationale. See Tr. at 25:9-18 (Court).

## LAW REGARDING THE ACCA

Congress designed the ACCA to address the "special danger" that career offenders carrying guns pose. Begay v. United States, 553 U.S. 137, 146 (2008). The ACCA imposes a minimum fifteen-year sentence for individuals who violate 18 U.S.C. § 922(g),[2] and have "three previous convictions . . . for a violent felony or serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). See United States v. Sprous, 2010

---

[2]18 U.S.C. § 922(g) prohibits certain individuals, including convicted felons, from transporting or possessing firearms.

- 14 -

U.S. App. LEXIS 15689, at *4 (10th Cir. 2010)(stating that, "[u]nder the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), a defendant who violates 18 U.S.C. § 922(g) and has 'three previous convictions . . . for a violent felony' is subject to a 15-year minimum sentence").

Whether a prior offense is a violent felony under the ACCA is a question of law. See Johnson I, 559 U.S. at 134-35; United States v. Martinez, 602 F.3d 1166, 1168 (10th Cir. 2010). The ACCA defines "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that --
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B). The ACCA formerly defined three classes of crimes that constitute violent felonies: (i) crimes that have as an element "the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(I); (ii) burglary, arson, extortion, or crimes involving the use of explosives, see 18 U.S.C. § 924(e)(2)(B)(ii); and (iii) crimes not within the first two categories which involve "conduct that presents a serious risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii). In Johnson II, the Supreme Court held that ACCA's provision making a "violent felony" any offense criminalizing "conduct that presents a serious risk of physical injury to another," called the Residual Clause, is impermissibly vague and that imposing an increased sentence under the Residual Clause thereby violates the Constitution's guarantee of due process. Johnson II, 135 S. Ct. at 2562-63. Still remaining, however, is § 924(e)(2)(B)(i), which defines "violent felony" to mean a crime that

"has as an element the use, attempted use, or threatened use of physical force," commonly referred to as the "element" or "force" clause, and the "enumerated" clause, embodying § 924(e)(2)(B)(ii)'s language which lists the crimes of burglary, arson, extortion, or the use of explosives as violent felonies. The Supreme Court expressly stated that its holding with respect to the Residual Clause does not call into question ACCA's application to the four enumerated offenses or to the remainder of the definition of a violent felony in § 924(e)(2)(B). See 135 S. Ct. at 2563. Johnson II, therefore, has no application to sentences enhanced under § 924(e)(2)(B)(i)'s force or element clause, or § 924(e)(2)(B)(ii)'s enumerated clause.

### 1. Use, Attempted Use, or Threatened Use of Physical Force.

A crime is a violent felony if it is punishable by imprisonment for more than a year, and "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(I).

> Although the ACCA does not define "physical force," Black's Law Dictionary defines "force" as "[p]ower, violence, or pressure directed against a person or thing," and "physical force" as "[f]orce consisting in a physical act." Black's Law Dictionary (8th Ed. 2004). Section 924(e)(2)(B)(I), moreover, includes not only the actual or attempted use of physical force against the person of another, but also the threatened use of such force.

United States v. Hernandez, 568 F.3d 827, 830 (10th Cir. 2009)(footnote omitted). See United States v. Herron, 432 F.3d 1127, 1137 (10th Cir. 2005)(stating that the defendant's convictions for having "knowingly place[d] or attempt[ed] to place another person in fear of imminent serious bodily injury . . . by the use of a deadly weapon" constituted violent felonies, because this "conduct easily satisfies the requirement of 'the threatened use of physical force against the person of another'").

In determining whether a conviction is for a violent felony under § 924(e)(2)(B)(I), the court applies a "categorical approach" under which the court looks "only to the fact of conviction

and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction."  United States v. Scoville, 561 F.3d 1174, 1176 (10th Cir. 2009)(citation omitted).  See United States v. Silva, 608 F.3d 663, 668 (10th Cir. 2010)(applying a categorical approach to determine whether a prior conviction qualifies as a violent felony under § 924(e)(2)(B)(I)).  All that is relevant is "'whether the elements of the offense are of the type that would justify its inclusion' within the ACCA"; the court does not "'inquir[e] into the specific conduct of this particular offender.'"  United States v. Scoville, 561 F.3d at 1176 (quoting James v. United States, 550 U.S. 192, 202 (2007)).  See Begay v. United States, 553 U.S. at 141 ("In determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."); Taylor v. United States, 495 U.S. 575, 602 (1990); United States v. Hernandez, 568 F.3d at 829.

> In determining whether a conviction obtained under this statute is a "violent felony" within the meaning of § 4B1.2(a), we apply a formal categorical approach looking only to the statutory definitions of the prior offense, and not to the particular facts underlying those convictions.
>
> Applying this approach, it is clear a violation of Wyo. Stat. Ann. § 7-18-112 is not a violent felony within the meaning of the guideline because . . . it is a crime of inaction and does not "involve[ ] conduct that presents a serious potential risk of physical injury to another."

United States v. Pappan, 315 F. App'x 677, 682 (10th Cir. 2009)(citations and footnotes omitted).

If a criminal statute proscribes both conduct that falls within the definition of violent felony and conduct that falls outside of it, the court uses a "modified categorical approach," under which the court may also look at the charging documents and the documents of conviction to determine whether the defendant was convicted of a violent felony.  United States v. Scoville,

561 F.3d at 1176.  See United States v. Avalos, 315 F. App'x 731, 732 (10th Cir. 2009)("[W]e employ the so-called 'modified categorical approach' when the statute of conviction encompasses both violent and nonviolent crimes.").  The Tenth Circuit clarified the proper use of the modified categorical approach in United States v. Herrera, stating: "[The modified categorical approach] is properly used when the underlying statute of conviction contains multiple element sets and is therefore divisible."  286 F. App'x 546, 552 (10th Cir. 2008).  See United States v. Silva, 608 F.3d at 668 (stating that the modified categorical approach involves consulting "charging documents and documents of conviction")(citing United States v. Hernandez, 568 F.3d at 829).  In United States v. Hernandez, the Tenth Circuit analyzed whether Texas' crime of deadly conduct[3] is a violent felony under the ACCA's § 924(e)(2)(B)(I).  Because the defendant argued the Texas crime of deadly conduct was too broad to categorically

---

[3]Texas law defines the crime of deadly conduct, in pertinent part, as:

(a) A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.

(b) A person commits an offense if he knowingly discharges a firearm at or in the direction of:

    (1) one or more individuals; or

    (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, vehicle is occupied.

(c) Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded.

. . . .

(e) An offense under Subsection (a) is a Class A misdemeanor. An offense under Subsection (b) is a felony of the third degree.

Tex. Penal Code Ann. § 22.05.

constitute a violent felony, the Tenth Circuit applied a modified categorical approach, looking to the charging documents and documents of conviction to uncover the allegation that the defendant "knowingly discharged a firearm in the direction of an individual." United States v. Hernandez, 568 F.3d at 829-30. The Tenth Circuit concluded that Hernandez' conduct had as an element "the use, attempted use, or threatened use of physical force against another person," and held that the charged crime was a "violent felony" under the ACCA's § 924(e)(2)(B)(I). United States v. Hernandez, 568 F.3d at 830.

In Johnson I, the Supreme Court analyzed whether a defendant's prior battery conviction under Florida law was a "violent felony" under the ACCA. See Johnson I, 559 U.S. at 135-45. Specifically, the Supreme Court inquired whether actually and intentionally touching another person constitutes the use of "physical force" within § 924(e)(2)(B)(I)'s meaning. 559 U.S. at 135-45. The Supreme Court noted that the ACCA does not define "physical force" and "therefore [gave] the phrase it's ordinary meaning," holding that the term physical force "means violent force -- i.e., force capable of causing physical pain or injury to another person." 559 U.S. at 140 (emphasis in original).

In United States v. Herron, the Tenth Circuit held that Colorado's menacing statute[4]

---

[4] Colorado defines menacing as:

A person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 3 misdemeanor, but, it is a class 5 felony if committed:

(a) By the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon; or

(b) By the person representing verbally or otherwise that he or she is armed with a deadly weapon.

constituted a violent felony under use of force prong, and that "threatening or engaging in menacing conduct with a deadly weapon," such that a victim believes he or she is in danger of receiving an immediate battery, has as an element the threatened use of physical force against another person.  United States v. Herron, 432 F.3d 1127, 1138 (10th Cir. 2005), cert. denied, 547 U.S. 1104 (2006).  The defendant argued that menacing was not a "violent felony," because the term deadly weapon[5] was defined so broadly as to include a fist, foot, or whiskey bottle, meaning that menacing includes conduct such as telling someone over the telephone that you are going to punch or kick them.  432 F.3d at 1138.  The Tenth Circuit stated: "Knowingly placing someone in fear . . . by the use of a deadly weapon certainly constitutes threatening someone," and "[a] threat to kick or strike someone comes within the ACCA definition regardless of whether a foot or bottle is a deadly weapon."  432 F.3d at 1138.

In United States v. Silva, the Tenth Circuit concluded that "'apprehension causing' aggravated assault . . . creates a commensurate threat of physical force" and likened said conviction to convictions under statutes that "criminalized intentional physical contact with a deadly weapon."  608 F.3d at 672.  The Tenth Circuit noted that the guideline provision defines

_____

C.R.S.A. § 18-3-206 (2000).

[5] Colorado defines a deadly weapon as:

"Deadly weapon" means any of the following which in the manner it is used or intended to be used is capable of producing death or serious bodily injury: (I) A firearm, whether loaded or unloaded; (II) A knife; (III) A bludgeon; or (IV) Any other weapon, device, instrument, material, or substance, whether animate or inanimate.

C.R.S.A. § 18-1-901(3)(e) (1999).  New Mexico's aggravated assault statute does not define "deadly weapon."  The New Mexico Criminal Code's uniform definition defines "deadly weapon" as "any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm . . . or any other weapons with which dangerous wounds can be inflicted."  N.M.S.A. 1978, § 30-1-12B (1963).

"'crime of violence' as 'any of the following: . . . aggravated assault, . . . or any offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another.'"  608 F.3d at 671 (quoting then-effective U.S.S.G § 2L1.2 app. N.1(B)(iii)).  But see United States v. McFalls, 592 F.3d 707, 716 (6th Cir. 2010)(noting that, although comment 1 to U.S.S.G § 4B1.2 lists "aggravated assault" as a crime of violence, South Carolina's crime of assault and battery of a high and aggravated nature was not categorically a crime of violence because it did not involve the same elements as generic aggravated assault).

## 2.    Enumerated Offenses.

In Taylor v. United States, 495 U.S. at 575, the case in which the Supreme Court endorsed the "categorical approach," the question was whether the word "burglary" -- one of the ACCA's enumerated offenses -- required a "uniform definition independent of the labels employed by the various States' criminal codes." 495 U.S. at 592.  The Supreme Court held that an offense constitutes "burglary" under § 924(e) if, regardless of its exact definition, it has the basic elements of a "generic" burglary -- i.e., an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime -- or if the charging paper and jury instructions required the jury to find all the elements of generic burglary to convict the defendant.  495 U.S. at 599.  The Supreme Court concluded that Congress used the word "burglary" in "the generic sense in which the term is now used in the criminal codes of most States."  495 U.S. at 589, 598 ("It seems to us implausible that Congress intended the meaning of 'burglary' for purposes of § 924(e) to depend on the definition adopted by the State of conviction.").  The Supreme Court explained:

> The convicting State's definition of "burglary" cannot control the word's meaning under § 924(e), since that would allow sentence enhancement for identical conduct in different States to turn upon whether the particular States happened to call the conduct "burglary."  That result is not required by § 924(e)'s omission of

> a "burglary" definition contained in a prior version of the statute absent a clear indication that Congress intended by the deletion to abandon its general approach of using uniform categorical definitions for predicate offenses. "Burglary" in § 924(e) must have some uniform definition independent of the labels used by the various States' criminal codes.

Taylor v. United States, 495 U.S. at 575. See United States v. Silva, 608 F.3d at 666 (applying the modified categorical approach "to determine 'the character of [Silva's] admitted burglary'")(citation omitted); United States v. Terrell, 593 F.3d 1084, 1091 (9th Cir. 2010)(applying the categorical and modified categorical approaches "to compare [the defendant's] prior burglary offenses to the 'generic' definition of burglary set forth in Taylor"); United States v. Juarez-Galvan, 572 F.3d 1156, 1159 (10th Cir. 2009)(stating that it "must consider 'the uniform generic definition[s]' of [kidnaping and robbery, enumerated in § 2L1.2], and then determine whether the state statute[s] correspond[] to that generic definition").

## ANALYSIS

Alires, who pled guilty to being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), argues that he does not have at least three prior convictions for a violent felony making him an armed career criminal who is subject to an enhanced sentence under the ACCA. The three prior convictions that the USPO recommends qualify as violent felonies for the ACCA's enhancement were for New Mexico residential burglary. Because the Court concludes that the term "dwelling house," as it is used in the New Mexico residential burglary statute, NMSA 1978, § 30-16-3(A), does not proscribe broader conduct than does the ACCA's generic enumerated offense of burglary, which itself proscribes unlawful entry into a "building or other structure," it will overrule the Objections and apply the ACCA's enhancement pursuant to 18 U.S.C. § 924(e)(1).

I. **THE COURT WILL APPLY THE ACCA ENHANCEMENT, BECAUSE NEW MEXICO'S RESIDENTIAL BURGLARY QUALIFIES AS A VIOLENT FELONY FOR THE PURPOSES OF THE ACCA'S ENUMERATED CLAUSE.**

The ACCA mandates a fifteen-year minimum sentence for defendants, such as Alires, who violate 18 U.S.C. § 922(g) and who also have three qualifying violent felony or serious drug convictions. See 18 U.S.C. § 924(e)(1). The statutory maximum is ten years should an offender not have three qualifying violent felony or serious drug convictions. 18 U.S.C. § 924(a)(2). The ACCA defines "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one year . . . that --
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) <u>is burglary, arson, or extortion, involves use of explosives,</u> ~~or otherwise involves conduct that presents a serious  potential risk of physical injury to another.~~

18 U.S.C. § 924(e)(2)(B) (emphasis added)(strikethrough added representing the ACCA's residual clause, which the Supreme Court of the United States found unconstitutional in Johnson v. United States, 135 S. Ct. 2551, 2557 (2015)). Here, Alires pled guilty to a charge of violating 18 U.S.C. § 922(g), and the PSR represents that Alires has four prior convictions for New Mexico residential burglary, NMSA 1978, § 30-16-3(A). See PSR ¶13, at 4. New Mexico's residential burglary statute provides:

> **Burglary.**
>
> Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.
>
> > **A.** Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony.
> >
> > **B.** Any person who, without authorization, enters any vehicle,

> watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony.

NMSA 1978, § 30-16-3. At the outset, the plain language of New Mexico's residential burglary statute makes no suggestion that its proscription "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The determination whether Alires' convictions for New Mexico residential burglary constitute violent felonies under the ACCA, then, rests upon the potential application of the ACCA's enumerated clause. See 18 U.S.C. § 924(e)(2)(B)(ii).

The ACCA's enumerated clause provides that an underlying felony conviction is a "violent felony" if it "is burglary, arson, or extortion, [or] involves use of explosives." 18 U.S.C. § 924(e)(2)(B)(ii). When considering whether a conviction is a qualifying violent felony under the ACCA's enumerated clause, courts -- by applying what is either known as the categorical approach or the modified categorical approach -- compare the elements of the crime of conviction with the elements of the "generic" version of the listed offense. Descamps v. United States, 133 S. Ct. at 2281. For the purposes of a court's comparison of the crime of conviction with the generic version of the listed offense, a prior conviction will qualify under the enumerated clause only if its elements are the same as, or narrower than, those of the generic offense -- here, that offense being burglary. See Descamps v. United States, 133 S. Ct. at 228; Mathis v. United States, 136 S. Ct. at 2247. Courts must look to state law for the definition of the crime of conviction's substantive elements, United States v. Harris, 844 F.3d 1260, 1264 (10th Cir. 2017), and federal law for the definition and scope of the ACCA's enumerated offenses, see United States v. Harris, 844 F.3d at 1264; United States v. Rivera-Oros, 590 F.3d 1123, 1126 (10th Cir. 2009).

The categorical approach to comparing the elements of the crime of conviction with the enumerated offenses requires the Court consider only whether the elements of the crime of conviction sufficiently match the elements of the generic offense, ignoring the particular facts of the case.  See Mathis v. United States, 136 S. Ct. at 2248.  Should the underlying statute of conviction "sweep[] more broadly than the generic crime," the prior conviction is not a qualifying violent felony under the ACCA's enumerated clause, irrespective of an analysis whether the defendant's actual conduct when committing the crime appears to qualify under the generic definition of an enumerated clause offense.  Descamps v. United States, 133 S. Ct. at 2283.  With respect to the enumerated offense bearing the closest resemblance to Alires' crimes of conviction, Taylor v. United States sets forth the generic definition of the ACCA's enumerated offense of burglary.  "Although the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime."  Taylor v. United States, 495 U.S. at 598.  Again, New Mexico's Residential Burglary statute provides:

**Burglary.**

Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.

> **A.** Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony.

> **B.** Any person who, without authorization, enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony.

NMSA 1978, § 30-16-3.  This statute -- § 30-16-3 as a whole -- does not fit neatly into the purviews of the categorical approach, because it outlaws multiple items of conduct, which sweeps more broadly than the generic enumerated offense of burglary.

There is, however, also a "modified" categorical approach, which the Court applies in the case of a state statute which has a complicated or complex -- and not generic -- structure, such as New Mexico's residential burglary statute replicated supra.  Descamps v. United States, 133 S. Ct. at 2283.  The "modified" categorical approach is applied where the statute is "divisible" -- meaning that it contains multiple alternative elements and thus defines multiple crimes.  Descamps v. United States, 133 S. Ct. at 2281.  When a statute defines multiple crimes by listing alternative elements in that fashion, courts undertake this "modified" categorical approach so they can determine which of the multiple alternative elements listed in the statute are applicable to the convicted defendant's case.  See Descamps v. United States, 133 S. Ct. at 2281.  Here, § 30-16-3(A) and § 30-16-3(B) constitute divisible alternative elements, requiring application of the "modified" categorical approach.  Cf. Mathis v. United States, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then . . . they must be elements.").  Should the Court apply the modified categorical approach, the Court must look to the record of Alires' convictions for residential burglary to determine what crimes under § 30-16-3, and with what elements, he has been convicted, and then compare the elements of that crime -- as the categorical approach commands -- with the elements of the relevant generic offense.  See Descamps v. United States, 133 S. Ct. at 2281.

Here, Alires argues the modified categorical approach should not be applied -- that is, the Court need not look at the factual elements of Alires' convictions, because he contends that he has been convicted of § 30-16-3(A), which is a standalone statute from § 30-16-3(B).  See Tr. at

24:22-25:6 (Keefe). Ostensibly, Alires fears that the Court will consult the record of the "charging documents and documents of conviction" and ascertain that he, in fact, burglarized traditional residential homes, which fall within the purviews of the ACCA's generic enumerated of burglary. See United States v. Silva, 608 F.3d at 668. This concern, the Court infers, is why Alires argues strongly that the Court should apply only the categorical approach as it applies to § 30-16-3(A) and not, hypothetically, risk importing the facts of the charging documents and documents of conviction into the Court's analysis. Cf. Tr. at 24:22-25:6 (Keefe)("I think the argument set forth in the reply I guess view that more the section A as its own stand alone statute that is the basis of these convictions, and within that statute we're still arguing that . . . the residential burglary within section A is, sweeps more broadly than the generic definition so there is no concern about the divisibility of the statute, because we're not even considering Section B in terms of the actual conviction in this case."). Were it evidently clear from the record that Alires was convicted under § 30-16-3(A), and not § 30-16-3 generally, the Court would agree with Alires that it could jump straight to an application of the categorical approach. It is not, however, so clear. See PSR ¶ 13, at 4. Still, the Court's independent investigation into Alires' charging documents and documents of conviction for his residential burglary convictions confirms that the divisible element of the statute under which Alires was convicted is § 30-16-3(A),[6] and not more broadly the § 30-16-3. All of this observation is to say that Alires' argument

---

[6]The United States cited United States v. Blair at the hearing, which provides that:

Blair tries to make of *Descamps* something it is not. He notes that, although the Pennsylvania robbery statute as a whole is divisible, some of its subsections can be viewed as indivisible and overbroad. . . . Given the clearly laid out alternative elements of the Pennsylvania robbery statute, it is obviously divisible and, therefore, a sentencing court can properly look to the kinds of documents listed by the Supreme Court in Taylor and Shepard to determine which subsection was the basis of Blair's prior convictions.

is right, yet it is also a red herring. The Court's modified categorical approach analysis of Alires' § 30-16-3 convictions simply proceeds as follows: because Alires was convicted four times for residential burglary, New Mexico's burglary statute is divisible, the PSR describes his convictions as relating to his burglarization of standard residential homes, see PSR ¶ 31, at 6; id. ¶ 34 at 8; id. ¶ 38, at 10; id. ¶ 40, at 11-12, and because the Court's review of the charging documents and documents of conviction confirms that Alires was convicted of the elements enumerated by NMSA 1978 § 30-16-3(A), Alires' offense of conviction is: "Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony." The Court must thus compare those elements of the statute leading to Alires' crimes of conviction with the generic enumerated offense of burglary under the ACCA, and should the specific provision of the underlying statute of conviction "sweep[] more broadly than the generic crime," the prior conviction is not a qualifying violent felony under the ACCA's enumerated clause. Descamps v. United States, 133 S. Ct. at 2283. The Court does not import the factual predicate of Alires' convictions beyond its threshold determination whether Alires was convicted under § 30-16-3(A) or (B).

The Court is thus left with having to analyze whether NMSA 1978 § 30-16-3(A)'s breadth -- Alires' offense of conviction -- outpaces that of the generic enumerated burglary offense. Compare NMSA 1978 § 30-16-3(A) ("Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony."), with Taylor v. United States, 495 U.S. at 598 ("Although the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an

_____

743 F. 3d at 224-25. The Court considers that scenario applicable to this case, and concludes that the New Mexico burglary statute is divisible.

unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime."). The only distinguishing feature in the language that comprises the two crimes crystallizes as entry into a "dwelling house," versus entry into "a building or other structure." The Court must first identify the generic enumerated burglary offense's scope, and then ascertain whether it subsumes, or is subsumed by, New Mexico's residential burglary statute in light of that statute's use of the term "dwelling house."

A building or other structure does not include certain "places . . . other than buildings," such as vending machines, booths, tents, automobiles, boats, vessels and railroad cars. Taylor v. United States, 495 U.S. at 599. The Supreme Court has also held that the term "other structure" is limited to an "enclosed space," indicating that "the scope of generic burglary would encompass not only those spaces that are designed for occupancy and intended for use in one place, but also other, potentially less complete 'enclosed spaces,' so long as they do not resemble a boat, motor vehicle, or other mode of transportation." United States v. Ramon Silva, 608 F.3d 663, 668 (10th Cir. 2010)(citing Shepard v. United States, 544 U.S. 13, 15-16 (2005)). Further, the Supreme Court has held and reiterated that generic burglary does not include the burglary of "vehicles." Shepard v. United States, 544 U.S. at 15-16 (concluding that generic burglary is limited to burglaries "committed in a building or enclosed space . . . , not in a boat or motor vehicle"). See Mathis v. United States, 136 S. Ct. at 2250 (concluding that an Iowa statute was overbroad where it reached "any building, structure, [or] land, water, or air vehicle" (alteration in original)(internal quotation marks omitted)). In United States v. Spring, however, the United States Court of Appeals for the Tenth Circuit held that generic burglary encompassed the burglary of a "mobile home or vehicle adapted for the overnight accommodation of persons." United States v. Spring, 80 F.3d 1450, 1462 (10th Cir. 1996)(internal quotation marks omitted).

The Tenth Circuit was primarily concerned with the difference between burglary of a building and burglary of a car -- burglary of buildings and structures like residential homes poses a risk of violence to the occupants of the house or other structure, see United States v. Spring, 80 F.3d at 1462, whereas burglary of a vehicle, is more akin to simple property crime, posing a less severe risk of violent confrontation, see United States v. Spring, 80 F.3d at 1462. The burglary of a mobile home or a similar structure, therefore, is much more like the burglary of a home than it is to the burglary of a vehicle, bringing it under the purview of generic burglary. See United States v. Spring, 80 F.3d at 1462. Cf. United States v. Silva, 608 F.3d at 668 (defining generic burglary as "coterminous" with a state statute that prohibits burglary of "a building or other place designed to provide protection for persons or property against weather or intrusion," but that does not include "vehicles or other conveyances whose primary purpose is transportation" (emphasis added)(internal quotation marks omitted)). Such defines the scope of the enumerated generic offense of burglary in the Tenth Circuit, a considerably more expansive scope than for which Alires has argued, because United States v. Spring, 80 F.3d at 1462, calls "generic" the burglary of a mobile home or a similar structure that is operatively more akin to the burglary of a home than it is to the burglary of a vehicle. United States v. Silva, 608 F.3d at 668.

Given what the generic burglary offense proscribes, the Court is left with determining what scope the term "dwelling house" encompasses. Alires' essential request of the Court is a conclusion that "dwelling house" includes "places, such as vehicles, watercraft, aircraft and similar structures," which the generic enumerated burglary offense does not encompass, thus "tak[ing] New Mexico residential burglary outside the bounds of generic burglary." Reply at 6. When comparing New Mexico residential burglary with generic burglary, as that offense has been outlined above, the Court is mindful of the Supreme Court's mandate that there must be "'a

realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" United States v. Silva, 608 F.3d at 666 n.2 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)). Such analysis "requires more than the application of legal imagination to a state statute's language." Gonzales v. Duenas-Alvarez, 549 U.S. at 193. New Mexico residential burglary is not as broad as Alires asserts, nor is it susceptible to the interpretation that Alires urges the Court to accept. Rather, as the Court will explain, a plain-text reading of the statute, the Supreme Court's decision in Mathis v. United States and New Mexico's state court decisions interpreting burglary of a "dwelling house" counsel a conclusion that New Mexico residential burglary does not include, for example, movable structures as Alires contends. Further, as the Court has explained, the Tenth Circuit has not construed generic burglary as narrowly as Alires contends, guiding the Court's following analysis.

Ultimately, Alires' argument is rooted in the fact that UJI 14-1631 NMRA defines "dwelling house" as "any structure, any part of which is customarily used as living quarters." State v. Ross, 1983-NMCA-065, ¶ 11, 665 P.2d 310. Thus, Alires argues, the act of habitation defines a "dwelling house." The Supreme Court of New Mexico has not, as of yet, interpreted that language in such an expansive fashion which moves beyond generic burglary's scope, a scope that -- in the Tenth Circuit -- rests the relevant distinction upon whether the building or structure has a primary purpose of transportation. See United States v. Ramon Silva, 608 F.3d at 668. No New Mexico court has considered what "any structure, any part of which is customarily used as living quarters," as the UJI uses that language, might entail.[7] Alires would win if all

---

[7]The Supreme Court of New Mexico's adoption of uniform jury instructions proposed by standing committees of the court establishes a presumption that the instructions are correct statements of law. See State v. Wilson, 1994-NMSC-009, ¶ 5, 867 P.2d 1175, 1178.

vehicles with inhabitants could constitute "dwelling houses."  In <u>State v. Ervin</u>, however, the Court of Appeals of New Mexico Court considered that a burglarized house was a "dwelling house" under § 30-16-3(A), because that defendant could not establish that the house's previous occupant "had abandoned the house or had no intention of returning."  1981-NMCA-068, ¶¶ 1, 4, 630 P.2d 765.  Indeed, the Court of Appeals of New Mexico cited with approval the common-law rule that "a building is not a dwelling before the first occupant has moved in; nor does it continue to be a dwelling after the last occupant has moved out with no intention of returning."  1981-NMCA-068, ¶ 3, 630 P.2d 765.  <u>State v. Ervin</u> thereby suggests that New Mexico residential burglary concerns only those structures that lend themselves to occupancy over some fixed period of time, and not just brief or fleeting habitation.  <u>See</u> 1981-NMCA-068, ¶ 3, 630 P.2d 765.  <u>See also</u> <u>State v. Lara</u>, 1978-NMCA-112, ¶¶ 4-5, 587 P.2d 52 (holding that a garage attached to a residence but from which there was no direct access to the interior of the house was a "dwelling house" under the residential burglary statute "because the garage was a part of the structure used as living quarters").

In <u>State v. Ruiz</u>, 1980-NMCA-123, 617 P.2d 160, <u>superseded by statute on other grounds as stated in State v. McCormack</u>, 1984-NMCA-042, ¶ 12, the Court of Appeals of New Mexico addressed the meaning of "dwelling house" in the context of holding that criminal trespass is a lesser included offense of residential burglary.  <u>See</u> <u>State v. Ruiz</u>, 1980-NMCA-123, ¶¶ 40-46, 617 P.2d 160.  The Court of Appeals of New Mexico stated "[t]he offense charged was burglary of a dwelling house; thus, we are not concerned with vehicles, watercraft or aircraft, or other structures."  1980-NMCA-123, ¶ 39, 617 P.2d 160.  Next, in comparing that case's specific facts, which entails analysis of the respective locational elements of residential burglary (entry of a "dwelling house") and criminal trespass (entry of "lands of another"), the Court of Appeals of

New Mexico held that trespass is a lesser included offense of residential burglary because entry of a dwelling house necessarily means entry "upon the lands of another." <u>See</u> 1980-NMCA-123, ¶ 45, 617 P.2d 160 (internal quotation marks omitted). "Lands," the Court of Appeals of New Mexico stated, "includes buildings and fixtures, and is synonymous with real property." 1980-NMCA-123, ¶ 45, 617 P.2d 160 (internal quotation marks omitted). "When one enters another's dwelling house, . . . one has entered lands of another." 1980-NMCA-123, ¶ 45, 617 P.2d 160. The Court of Appeals of New Mexico was careful to note that "[t]his reasoning, of course, would not apply if the burglary was of a vehicle, watercraft or aircraft." 1980-NMCA-123, ¶ 45, 617 P.2d 160. The Court of Appeals of New Mexico, in <u>State v. Ruiz</u>, thus surmised that the locational element of residential burglary excludes vehicles and the like, and is limited to fixed structures. <u>See</u> 1980-NMCA-123, ¶ 45, 617 P.2d 160. NMSA 1978, § 30-16-3(A) is thus not susceptible to the broad interpretation that Alires' request espouses -- that the Court conclude that "dwelling house" includes "places, such as vehicles, watercraft, aircraft and similar structures." Reply at 6.

Such an interpretation is further undercut by the New Mexico Legislature's choice to include in its enunciation of a burglary offense NMSA 1978, § 30-16-3(B), which provides: "Any person who, without authorization, enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony." NMSA 1978, § 30-16-3(B). Indeed, Alires relies heavily on a Court of Appeals of New Mexico's consideration of § 30-16-3(B) to argue for this Court's expansive interpretation of § 30-16-3(A). <u>See</u> Objections at 2 (citing <u>State v. Foulenfont</u>, 1995-NMCA-028, 895 P.2d 1329). The New Mexico Legislature, clearly intended, however, to proscribe the entry into a "dwelling house" in a distinct fashion from its proscription of entry into "any

vehicle, watercraft, aircraft or other structure, movable or immovable," making the former a third-degree felony and the latter a fourth-degree felony. NMSA 1978, § 30-16-3(A)-(B). The Court concludes that, by making unlawful two distinct events, NMSA 1978, § 30-16-3(A) must be restricted to its plain language, which refers to burglary only of a "dwelling house," and does not refer to burglary of vehicles, watercrafts, and aircrafts. NMSA 1978, § 30-16-3(A).

As to the specific structures of what a "dwelling house" may be, given that the UJI defines that term as "any structure, any part of which is customarily used as living quarters," State v. Ross, 1983-NMCA-065, ¶ 11, 665 P.2d 310, the Court is convinced that the Supreme Court of New Mexico would be persuaded by the Court of Appeals of New Mexico's suggestion in State v. Ruiz, 1980-NMCA-123, ¶ 45, 617 P.2d 160, during its analysis of what a "dwelling house" may be in comparison to the "lands" of another, that its "reasoning, of course, would not apply if the burglary was of a vehicle, watercraft or aircraft." 1980-NMCA-123, ¶ 45, 617 P.2d 160. The Court concludes that the Supreme Court of New Mexico would not read NMSA 1978, § 30-16-3(A) in a fashion which swallows the distinct nature of NMSA 1978, § 30-16-3(B) by including as a "dwelling house" places "such as vehicles, watercraft, aircraft and similar structures." Reply at 6.

Further, given the dual nature of New Mexico's burglary statute, the Court is confident there is no realistic probability that the Supreme Court of New Mexico would apply the residential burglary statute to a locational element outside the ACCA's enumerated generic burglary offense. It is clear that generic burglary excludes the burglary of "vehicles" with the primary purpose of transportation.

> Accordingly, we held that a state burglary statute that proscribed the unauthorized entry of a building or other place designed to provide protection for persons or property against weather or intrusion, but does not include vehicles or other

conveyances whose primary purpose is transportation was coterminous with the generic definition of burglary.

United States v. Silva, 608 F.3d at 668 (internal quotation marks omitted). Cf. Shepard v. United States, 544 U.S. at 15-16 (holding that generic burglary is limited to burglaries "committed in a building or enclosed space . . . , not in a boat or motor vehicle"). It is not clear, however, that the Supreme Court of New Mexico would extend the notion of "dwelling house" beyond the same boundaries of the generic burglary offense -- meaning that the Supreme Court of New Mexico is not likely to conclude, for example, that a vehicle with the primary purpose of transportation, like a motor home or trailer, constitutes a "dwelling house." Indeed, as the Court has referenced, the Court of Appeals of New Mexico has suggested there is a distinction between a "dwelling house" and a vehicle, State v. Ruiz, 1980-NMCA-123, ¶ 45, 617 P.2d 160, causing the Court to conclude that the Supreme Court of New Mexico would similarly choose to limit its interpretation of NMSA 1978, § 30-16-3(A) to adhere to the distinct nature of the burglary offenses the New Mexico Legislature proscribes in accordance with the relevant privacy interests at stake. The Court notes that, while the "liberal" and generous thing to do for Alires and other federal criminal defendants and prisoners might, at first glance, appear to be to conclude the way that Alires asks the Court to interpret New Mexico's residential burglary statute, a little reflection makes clear that Alires' proffered interpretation would prejudice the vast majority of criminal defendants -- probably state defendants. Alires' interpretation would vastly expand the scope of a third-degree felony, thereby making crimes that are now fourth-degree felonies into third-degree felonies. Because the Court thus sees no realistic probability that the Supreme Court of New Mexico would blur the plain language of New Mexico's residential burglary statute in that fashion, the Court concludes that NMSA 1978, § 30-16-3(A) is the same as, or narrower than, those of the generic offense -- here, that offense being burglary. See Descamps v.

United States, 133 S. Ct. at 228. The Court will apply the ACCA's enhancement in this case and overrule Alires' Objections, because Alires has three qualifying convictions which constitute violent felonies under the ACCA's enumerated clause.

**IT IS ORDERED** that the Defendant's Objections to Presentence Report, filed March 22, 2017 (Doc. 33), is overruled. The Court will apply the ACCA's enhancement when imposing Defendant Alires' sentence.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
    United States Attorney
David M. Walsh
    Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Michael Keefe
    Assistant Federal Public Defender
Office of the Federal Public Defender
Albuquerque, New Mexico

    *Attorneys for the Defendant*